Kevin G. Little (SBN 149818)
**LAW OFFICE OF KEVIN G. LITTLE**
Post Office Box 8656
Fresno, California 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
E-Mail: kevin@kevinglittle.com

Anthony P. Capozzi (SBN 68525)
**LAW OFFICES OF ANTHONY P. CAPOZZI**
1233 W Shaw Avenue, Suite 102
Fresno, California 93711
Telephone: (559) 221-0200
Facsimile: (559) 221-7997
E-Mail: anthony@capozzilawoffices.com

Attorneys for Plaintiffs Universal Meditech Inc. and David He

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION**

| | |
|---|---|
| UNIVERSAL MEDITECH, INC., a California corporation; DAVID HE, an individual<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF REEDLEY; BUILDING OFFICER JEREMY HARRISON; CODE ENFORCEMENT OFFICER JESALYN HARPER; FIRE CHIEF JEFFREY ISAAK; COUNTY OF FRESNO; ASSISTANT PUBLIC HEALTH DIRECTOR HUMBERTO PRADO; FDA-OCI SPECIAL AGENT JEFFREY MAURICE; FDA-OCI SPECIAL AGENT MARIDEHL MATHER; UNKNOWN GOVERNMENT OFFICIALS<br><br>Defendants. | Case No.: 1:24-cv-00528-JLT-EPG<br><br>*Assigned to: The Hon. Jennifer L. Thurston*<br><br>**PLAINTIFFS' PARTIAL OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CITY OF REEDLEY AND COUNTY OF FRESNO DEFENDANTS; RELATED OBJECTION TO REQUESTS FOR JUDICIAL NOTICE; ALTERNATIVE REQUEST FOR LEAVE TO AMEND**<br><br>Complaint Filed: MAY 6, 2024 |

TO THE HONORABLE COURT:

Plaintiffs Universal Meditech, Inc. and David He, through their undersigned counsel, hereby submit this partial opposition to the motions to dismiss filed by defendants City of Reedley, Building Officer Jeremy Harrison, Code Enforcement Officer Jessalyn Harper and Fire

Chief Jeffrey Isaak ("the City of Reedley Defendants") and also by defendants the County of Fresno and Assistant Public Health Director Humberto Prado ("the County of Fresno Defendants").

Plaintiffs base their opposition on the within points and authorities, as well as any additional evidence and argument that may be presented in connection with this motion, and also the Court's file in this matter. As more fully set forth herein, the Reedley and County of Fresno defendants' motion should be denied because (1) the *Rooker-Feldman* doctrine is inapplicable, since Plaintiff Universal Meditech, Inc. was not a party to the now concluded state abatement proceedings; (2) *Younger* abstention is inapplicable because the state proceedings have concluded, afford Plaintiff no meaningful relief for the destruction of its property that has already occurred, and it only seek damages, not injunctive relief, here; (3) *Burford* abstention is equally inapplicable because the state proceedings at issue are not complex administrative proceedings and are not ongoing, and Plaintiff seeks damages; and, finally, (4) Plaintiffs' federal judicial deception satisfies all applicable pleading standards.

Plaintiffs concede that their Bane Act claim is subject to dismissal based on the state litigation privilege.

Plaintiffs also object to the requests for judicial notice made by both the Reedley and County of Fresno Defendants, as those requests pertain to their Rule 12(b)(6) motions.

Finally, Plaintiffs alternately request leave to file an amended pleading, as permitted by Federal Rule of Civil Procedure 15.

## INTRODUCTION

Plaintiffs filed this action on May 6, 2024, asserting jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. DN 1. The original Complaint named the City of Reedley, Building Officer Jeremy Harrison, Code Enforcement Officer Jesalyn Harper, Fire Chief Jeffrey Isaak, County of Fresno, Assistant Public Health Director Humberto Prado, FDA-OCI Special Agent Jeffrey Maurice, FDA-OCI Special Agent Maridehl Mather, and Unknown Government Officials. DN 1.

On July 18, 2024, both the City of Reedley and County of Fresno Defendants filed motions to dismiss. DN 7, 9. The City of Reedley Defendants contend: (1) this Court lacks subject matter jurisdiction based on the *Rooker-Feldman*, *Younger* and *Burford* doctrines; (2) the Complaint fails to state a claim for relief; (3) the Complaint fails to comply with the applicable heightened pleading standard; and (4) Defendants are immune under California law. DN 9. The County of Fresno Defendants make similar arguments. DN 7.

As set forth more fully herein, the defendants' motions should be denied, except as otherwise conceded herein, and leave to amend should be granted. This case is meritorious and should proceed through discovery and toward trial.

**SUPPORTING FACTUAL ALLEGATIONS**

Plaintiffs' Complaint sets forth the following factual allegations (DN 1, ¶¶ 4-24):

**PARTIES**

> 4. Plaintiff Universal Meditech, Inc. (UMI) is a California corporation in good standing, Entity No.3811331. UMI has been in lawful business in the State of California since 2015,operating at authorized locations in Tulare and Fresno County at all relevant times. UMI's ownership is based in the People's Republic of China. UMI is in the lawful business of manufacturing and producing diagnostic testing kits and other biologic medical devices. At all times when it was actively manufacturing and producing said devices, UMI had valid authorization from the federal Food and Drug Administration (FDA). Due to a business dispute with its landlord in the fall of 2022, UMI ceased its lawful operations in the City of Fresno and rented a warehouse in the City of Reedley, located at 850 I Street. UMI began storing its assets at the Reedley warehouse beginning in November 2022, in anticipation of the completion of its new facility -- then under construction in the City of Fresno – becoming available in May 2023. The Reedley warehouse was simply that, a warehouse, and UMI was not in active business during the time that its business assets were being stored there.
>
> 5. Plaintiff David He is a Chinese national living in the United States in the State of California. Mr. He was at all times an authorized representative of UMI.
>
> 6. Defendant City of Reedley ("Reedley") is a public entity under California law. Reedley operates through its subsidiary agencies and personnel. Reedley is sued herein under California law, under which it is vicariously responsible for the unlawful acts of its employees and agents pursuant to California Government Code § 815.2.

7. Defendant Building Officer Jeremy Harrison ("Officer Harrison") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Officer Harrison was on duty and acting as a Reedley officer and employee. At all material times herein, Officer Harrison acted individually and within the course and scope of his employment with Reedley. Officer Harrison is sued in his personal capacity for acts he performed under the color of law. As alleged herein, Plaintiffs believe in good faith that Officer Harrison is legally responsible and liable for the injuries and damages alleged herein.

8. Defendant Code Enforcement Officer Jesalyn Harper ("Officer Harper") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Officer Harper was on duty and acting as a Reedley officer and employee. At all material times herein, Officer Harper acted individually and within the course and scope of his employment with Reedley. Officer Harper is sued in his personal capacity for acts she performed under the color of law. As alleged herein, Plaintiffs believe in good faith that Officer Harper is legally responsible and liable for the injuries and damages alleged herein.

9. Defendant Fire Chief Jeffrey Isaak ("Chief Isaak") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Chief Isaak was on duty and acting as a Reedley officer and employee. At all material times herein, Chief Isaak acted individually and within the course and scope of his employment with Reedley. Chief Isaak is sued in his personal capacity for acts he performed under the color of law. As alleged herein, Plaintiffs believe in good faith that Chief Isaak is legally responsible and liable for the injuries and damages alleged herein.

10. Defendant County of Fresno ("Fresno County") is a public entity under California law. Fresno County operates through its subsidiary agencies and personnel. Fresno County is sued herein under California law, under which it is vicariously responsible for the unlawful acts of its employees and agents pursuant to California Government Code § 815.2.

11. Defendant Assistant Public Health Director Humberto Prado ("Asst. Dir. Prado") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Asst. Dir. Prado was on duty and acting as a Fresno County officer and employee. At all material times herein, Asst. Dir. Prado acted individually and within the course and scope of his employment with Fresno County. Asst. Dir. Prado is sued in his personal capacity for acts he performed under the color of law. As alleged herein, Plaintiffs believe in good faith that Asst. Dir. Prado is legally responsible and liable for the injuries and damages alleged herein.

12. Defendant FDA-OCI Special Agent Jeffrey Maurice ("S.A. Maurice") is, upon information and belief, a citizen and resident of the State of California, County of Alameda. With respect to all of the acts complained of herein, S.A. Maurice was on duty and acting as a federal law enforcement official with the FDA's Office of Criminal Investigations. At all material times herein, S.A. Maurice acted individually and within the course and scope of his employment with the FDA. S.A. Maurice is sued in his personal capacity for acts he performed under the color of law. As alleged herein, Plaintiffs believe in good faith that S.A. Maurice is legally responsible and liable for the injuries and damages alleged herein.

13. Defendant FDA-OCI Special Agent Maridehl Mather ("S.A. Mather") is, upon information and belief, a citizen and resident of the State of California, County of Alameda. With respect to all of the acts complained of herein, S.A. Mather was on duty and acting as a federal law enforcement official with the FDA's Office of Criminal Investigations. At all material times herein, S.A. Mather acted individually and within the course and scope of her employment with the FDA. S.A. Mather is sued in her personal capacity for acts she performed under the color of law. As alleged herein, Plaintiffs believe in good faith that S.A. Mather is legally responsible and liable for the injuries and damages alleged herein.

14. The fictitious defendants are sued as Unknown Government Officials and they are, upon information and belief, citizens and residents of the State of California. With respect to all of the acts complained of herein, these fictitious defendants were on duty and were acting as officers and employees of a California public entity, or a cooperating state or federal law enforcement agency. At all material times herein, these fictitious defendants acted individually and within the court and scope of their employment. These fictitious defendants are sued in their individual capacities for acts they performed under the color of law. As alleged herein, Plaintiffs believe in good faith that these fictitious defendants are legally responsible and liable for the injuries and damages alleged herein. These fictitious defendants will be renamed in their actual names once they become known.

## FACTUAL ALLEGATIONS

15. Shortly after UMI rented its Reedley warehouse, it began to be investigated by some or all of the Defendants. Plaintiffs cooperated fully in the investigation, and by March 2023 it should have been clear that UMI was not in active business and was only storing its assets at the warehouse it was leasing. To the extent that there was any activity at the warehouse, it was only to monitor and maintain its valuable assets, which included biological materials and laboratory mice, as well as medical devices and medical device components. At all times, UMI had its assets safely and securely stored, and there was never any indication of any threat to public health and safety. It should have further been clear that the federal Animal Welfare Act, 7 U.S.C. § 2145, *et seq*., exempted UMI's

KGL

possession and maintenance of laboratory mice, and preempted any conflicting state laws. UMI and Mr. He also made it clear that to the extent that there were any zoning or permitting issues related to the storage of the valuable assets at the Reedley warehouse, UMI would cure those issues by either further securing the warehouse, obtaining the needed authorizations, or relocating to another authorized location. UMI personnel and Mr. He were at all times open and cooperative with any and all government officials involved in the investigation.

16. Notwithstanding these clear and ascertainable facts, Officer Harrison wrote and submitted an affidavit under penalty of perjury on March 10, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on March 13, 2023.

17. Further notwithstanding these clear and ascertainable facts, Officer Harper wrote and submitted an affidavit under penalty of perjury on March 29, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on April 4, 2023.

18. Further notwithstanding these clear and ascertainable facts, Asst. Dir. Prado wrote and submitted an affidavit under penalty of perjury on June 15, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on June 23, 2023.

19. Further notwithstanding these clear and ascertainable facts, Officer Harper and Chief Isaak wrote and submitted affidavits under penalty of perjury on July 18, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on July 26, 2023.

20. Further notwithstanding these clear and ascertainable facts, Asst. Dir. Prado wrote and submitted an affidavit under penalty of perjury on June 15, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on June 23, 2023.

21. Further notwithstanding these clear and ascertainable facts, S.A. Maurice wrote and submitted an affidavit under penalty of perjury on September 11, 2023 indicating that UMI was operating a laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on September 13, 2023.

22. In connection with the execution of these various warrants, UMI was deprived of millions of dollars of property without lawful justification, as a result of the seizure and destruction of its assets, including extremely valuable, genetically engineered laboratory mice not subject to duplication. Further, based on the false narrative that UMI was storing contagions that endangered the community, its biological assets were destroyed and seized, as well as its medical device inventory and business records. Explicit and repeated representations from UMI representatives regarding the lawful nature and valuable nature of its assets were ignored, and they were seized and, in many instances, destroyed without justification.

23. The Defendants also filed their false and misleading affidavits as public records, which resulted in a wave of extremely negative publicity, fueled by a combination of xenophobia, discrimination, ignorance, and the motivations of public officials seeking to capitalize on those sentiments. UMI was characterized as operating an “illegal Chinese lab” and of engaging in bioterrorism, although neither accusation had even a scintilla of factual support. These accusations have done irreparable damage to UMI’s business interests and turned a multimillion dollar operation into a worthless pariah. UMI’s new facility also had to be abandoned as a result of the negative publicity.

24. Despite being unjustifiably dragged through the mud as a result of the Defendants’ misconduct, UMI and Mr. He continued to try to cooperate with investigators, in an effort to salvage their business and at least some of their assets. Under the direction of FDA officials, Reedley officials arranged a pretext meeting with Mr. He on October 19, 2023, so that he could be arrested based on baseless federal criminal charges. In connection with that arrest, S.A. Maurice and S.A. Mather used unreasonable and excessive force on Mr. He, which resulted in his sustaining a severe head injury that continues to cause him serious health issues and pain.

## STANDARD OF REVIEW

The Reedley and County of Fresno Defendants invoke Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in their motions.

***12(b)(1)***

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on the grounds that the court lacks jurisdiction over the subject matter. See Fed. R. Civ. P. 12(b)(1). Plaintiff has the burden to establish that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colls. v. United States*, 217 F.3d 770, 778-779 (9th Cir.2000). “A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts

that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). When a defendant files a facial challenge to jurisdiction, all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.2004); *see also Meyer*, 373 F.3d at 1039. When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Meyer*, 373 F.3d at 1039. The court need not presume the truthfulness of a plaintiff's allegations under a factual attack. *See id*.

***12(b)(6)***

Generally, the federal system is one of notice pleading. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (2002). A pleading is only required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). The required "short and plain statement" must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. The Supreme Court has more recently clarified that a federal complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Even after *Twombly* and *Ashcroft*, however, a plaintiff need not plead a *prima facie* case in his complaint. *Swierkiewicz*, 534 U.S. at 514–515; *see also Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011) (reaffirming *Swierkiewicz*'s continuing validity). "The

theory of the federal rules is that once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts." *Starr v. Baca*, 652 F.3d at 1212.

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Mollett v. Netflix, Inc*., 795F.3d 1062, 1065 (9th Cir. 2015). The district court's consideration of a Rule 12(b)(6) motion to dismiss is limited to considering the allegations in the complaint. *Leite v. Crane Co*., 749 F.3d 1117, 1121-22 (9th Cir. 2014); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). All of the complaint's factual allegations are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth*.,540 F.3d 916, 919 (9th Cir. 2008). Except as otherwise required under the limited circumstances inapplicable here, facts need only be alleged generally, and the court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pacific Prop. & Dev. Corp*., 358 F.3d 1097, 1106 (9th Cir. 2004). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).

Of course, a court considering a 12(b)(6) motion does not have "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d1049, 1056-57 (9th Cir. 2008). Legal conclusions also need not be accepted. *Sprewell v. Golden State Warrio*rs, 266 F.3d 979, 988

(9th Cir. 2001). The Court also is not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice. *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d1251, 1254 (9th Cir. 2013). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. *See Chaset v. Fleer/Skybox Int'l,* 300F.3d 1083, 1087-1088 (9th Cir. 2002); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (if a court dismisses the complaint, it should grant leave to amend, unless it determines that the pleading could not possibly be cured by the allegation of other facts).

## ARGUMENT

### *I. The Rooker Feldman Doctrine is Inapplicable*

Both the Reedley and Fresno County Defendants invoke the *Rooker-Feldman* doctrine in support of their contention that this Court lacks jurisdiction. However, that doctrine, which arose from *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), is inapplicable, because plaintiff Universal Meditech, Inc. was not a party to any of the underlying state court proceedings, which were all *in rem* actions seeking the abatement of property. While Universal Meditech had an *interest in* those proceedings, that is different from being *a party*, and the *Rooker-Feldman* doctrine has a very narrow application. Because there is no indication that Universal Meditech was an *actual party* in the state court abatement proceedings, or participated in those proceedings in any way, its federal claims cannot be barred by *Rooker-Feldman*.

The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction "over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005*); see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) (explaining the *Rooker-Feldman* doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court"). This reflects Congress's decision to locate federal appellate

KGL

jurisdiction over state court judgments exclusively in the Supreme Court. *Exxon Mobil*, 544 U.S. at 283 (citing 28 U.S.C. § 1257; *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923)). After several decades of expansion of the doctrine in lower federal courts, the Supreme Court narrowed the Rooker-Feldman doctrine to its current form in *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280 (2005).

The *Rooker-Feldman* doctrine recognizes a jurisdictional bar on lower federal courts' review of claims where (1) the Plaintiff lost in state court, (2) the state court judgment caused the Plaintiff's injuries, (3) the state court rendered judgment before the Plaintiff filed the federal claim, and (4) the Plaintiff is asking the district court to review and reject the state court judgment. *Id*. at 284. Where these factors exist, a federal court lacks subject matter jurisdiction. *See Lance*, 546 U.S. at 465.

Although the Rooker-Feldman doctrine represents a firm jurisdictional bar, it is narrow in scope. *See id*. at 464 ("[O]ur cases since *Feldman* have tended to emphasize the narrowness of the Rooker-Feldman rule." (*citing Exxon Mobil*, 544 U.S. at 292)). It generally does not bar a suit by a federal-court plaintiff who was not a party in the state court litigation, nor does it bar a claim that does not seek to modify or set aside a state court judgment. *See Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111–12 (10th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Oct. 12, 2000) (holding *Rooker-Feldman* did not bar claim for declaration of adoption laws' unconstitutionality where plaintiff had not been a party to adoption proceeding and mounted only a general challenge to the validity of state adoption laws).

The *Rooker-Feldman* doctrine does not bar suit by plaintiffs who were "not parties, they were not bound by the judgment, and they were neither predecessors nor successors in interest to the parties" in the state court litigation, even if they had interests identical to those of a party. *See Lance*, 546 U.S. at 465 (rejecting application of *Rooker-Feldman* doctrine to non-parties who were in privity with a party). The underlying rationale for this general rule is that a federal court cannot be said to be entertaining an appeal from a state court judgment if the individual bringing the challenge is not one who could ordinarily appeal that judgment. *See Lance*, 546 U.S. at 465

(determining Rooker-Feldman doctrine did not apply where federal plaintiffs had not participated in state court proceeding and thus were not in a position to appeal it (citing *Karcher v. May*, 484 U.S. 72, 77 (1987) ("[T]he general rule [is] that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom.").  A party's potential ability in prior state court proceedings is immaterial to the Rooker-Felman inquiry.  *See Shelby Cnty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840–41 (8th Cir. 2017) (concluding that a federal litigant's ability to have intervened in the state court action was relevant to possible preclusion, not to the *Rooker-Feldman* doctrine, under the Supreme Court's narrowing of the doctrine in and after *Exxon Mobil*).

In sum, because the Reedley and County of Fresno Defendants have not shown in any way that Plaintiff Universal Meditech was an *actual party* in the state court abatement proceedings, or litigated in any way in those proceedings, the *Rooker-Feldmani* doctrine does not deprive this Court of subject matter jurisdiction.  As a general rule, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).

### ***II. Younger Abstention is also Inapplicable***

Simply stated, abstention under the Younger doctrine is inapplicable because there is no state court proceedings that is ongoing in any meaningful way that can redress Plaintiff Universal Meditech's losses.  Its priceless, genetically modified test rats have all been disposed of or are dead.  *See* Prado Decl., ¶ 21 (discussing the euthanization and death of the mice).  Universal Meditech's test kits have either been destroyed or are aged out of usability and are worthless. *See* DN 11, pp. 88, 96, 109, 122, 136 (confirming the destruction testing kits).  Nothing of value that motivates this lawsuit remains. The judicial notice documents provided by the defendants confirm this.

In "exceptional circumstances," the *Younger* abstention doctrine instructs federal courts to decline to hear a case when a parallel state proceeding is ongoing. *New Orleans Pub. Serv.,*

*Inc. v. Council of New Orleans (NOPSI)*, 491 U.S. 350, 368 (1989). *Younger* abstention is rooted in "the basic doctrine of equity jurisprudence that courts of equity should not act . . . to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). Following a period of continuous expansion, including to some civil proceedings, the Supreme Court firmly cabined the scope of the doctrine, holding that *Younger* applies only to three categories of cases (the NOPSI categories): 1) "ongoing state criminal prosecutions"; 2) "certain civil enforcement proceedings"; and 3) "civil proceedings involving certain orders . . . uniquely in the furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (cleaned up). If a state proceeding falls into one of these three categories, *Younger* abstention is applicable, but only if the three additional factors laid out in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982) are also met: that the state proceeding is 1) "ongoing"; 2) "implicate[s] important state interests"; and 3) "provide[s] adequate opportunity . . . to raise constitutional challenges." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019) (quoting *Middlesex*, 457 U.S. at 432) (cleaned up).

There is no indication that the abatement proceedings remain ongoing in any meaningful way. The priceless property of Universal Meditech, Inc. has already been destroyed and there is no damages remedy available in the state court proceedings to the extent that they may in even a technical sense remain ongoing. Certainly, since there is no possibility of resurrecting the destroy property, there is no possibility of raising a constitutional claim that could result in the vindication of any rights through compensation. This is not a case where Universal Meditech is asking this court to take control over physical assets already under control of a state court. *Cf. State Eng'r v. S. Fork Band of Te-Maok Tribe of W. Shoshone Indians*, 339 F.3d 804, 809 (9th Cir. 2003). When there is no pending state court proceedings, the federal plaintiff is not seeking to enjoin any such proceeding, and purely monetary damages are sought, a federal court's "obligation to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*,

571 U.S. 69, 77 (2013). The absence of any pending state abatement proceeding renders Younger abstention inapplicable. *See Amanatullah v. Colo. Bd. of Med.* Examiners, 187 F. 3d 1160, 1163 (10th Cir. 1999).

### *III. Burford Abstention is also Inapplicable*

The *Burford* abstention doctrine is named for *Burford v. Sun Oil*, 319 U.S. 315 (1943), which involved a federal court suit against a state agency responsible for oversight and regulation of the state oil industry. The doctrine holds that "where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies" in two situations: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *New Orleans Pub. Serv. Inc. (NOPSI) v. Council of New Orleans*, 491 U.S. 350, 361 (1989).

Abstention, however, is not required in every case involving a complex state administrative process or even where there is a potential for conflict between federal ruling and state regulatory law or policy. Instead, the primary purpose of the state's administrative system must be to achieve a uniform policy regarding an essentially local problem. See Arkansas Medical Soc., Inc. v. Reynolds, 6 F.3d 519, 529 (8th Cir. 1993). Indeed, Burford abstention is not automatic, and is actually disfavored when federal questions are involved. It is particularly inappropriate when: (1) a litigant attacks state regulatory scheme based on federal preemption; (2) the state forum lacks jurisdiction over federal claims and the litigant would be denied adequate and timely review of such claims; and (3) the case involves civil rights claims. See New Orleans Pub. Serv., Inc., 491 U.S. at 362-363; *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 806 (9th Cir. 2002). A state court process is not complex simply because a defendant claims it is, and the lack of a specialized state form to hear the disputes at issue undercuts any inference of complexity. Where a state has "not chosen to concentrate suits challenging the administrative

action in a particular court, … the threshold requirements for the exercise of *Burford* abstention . . . have not been satisfied." *S. Cal. Edison*, 307 F.3d at 806. There simply is no basis for finding that the already completed state court abatement proceedings are in any way akin to the specialized railway proceedings at issue in *Burford*, and this Court cannot possibly interfere in an already completed process.

### ***IV. Plaintiffs' Federal Civil Rights Claim is Properly Alleged***

It is notable that they attempt to use the judicially noticed documents that presumably are reviewable only for purposes of their 12(b)(1) challenges to bolster their 12(b)(6) motions. This sleight of hand is not permitted by the standard of review, however. When reviewing the sufficiency of the allegations of the Complaint, the Court must limit its analysis to the allegations themselves, without consideration of external evidentiary sources. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017). Thus, all of the one-sided factual documents prepared by the defendants themselves cannot be considered in assessing the sufficiency or the plausibility of the Plaintiffs' factual allegations. *Id. Furthermore, even if the Court judicially notices the defense documents, they are not considered for their truth under federal evidentiary rules.* Judicial notice under Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." Lee, 250 F.3d at 689 (quotation marks and citation omitted). But a court cannot take judicial notice of disputed facts contained in such public records. *Id*. Plaintiffs therefore object to the consideration of the contents of the judicial notice documents for purposes of the Defendants' 12(b)(6) motions.

If the Court reviews, as required, the allegations of the Complaint themselves, it is apparent that they are sufficient. Plaintiffs contend that the individual defendants misrepresented essential facts regarding the hazardous, illegal, and unhealthful nature of the contents of the

subject warehouse. Complaint, ¶¶ 15-24. Even under current standards, the federal pleading rules are comparatively lenient. Typically, facts need only be alleged generally, and the court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).

There is a well-established constitutional right for individuals to be free from deception in the presentation of evidence during court proceedings. *Greene v. Camreta*, 588 F.3d 1011, 1034–35 (9th Cir. 2009), *vacated in part on other grounds*, 563 U.S. 692 (2011); *see also Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) ("A seizure conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment."); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108 (9th Cir. 2010) (deliberately fabricating evidence in civil child abuse proceedings violates due process) "[G]overnment perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in [the] courts." *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017). To prevail on a claim for judicial deception, "the plaintiff must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). Plaintiffs' allegations satisfy this standard.

Defendants also contend that Plaintiffs have failed to satisfy the heightened standards for pleading fraud, as required when alleging judicial deception claims. This Circuit has held that

allegations which satisfy Rule 12(b)(6) usually also satisfy Rule 9(b). *See United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1180 (9th Cir. 2016) (discussing pleading requirements for claims regarding fraud under Rule 9(b), for which dismissals are "functionally equivalent" to Rule 12(b)(6)). Moreover, "this [heightened pleading] standard 'does not require absolute particularity or a recital of the evidence.'" *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (3d ed. 2016)). Further, "a complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to conduct the fraud." *Id*. (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). Plainti8ffs' factual allegations are very similar to those this Circuit has found satisfy Rule 9(b) in the judicial deception context. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1145-1146 (9th Cir. 2021) (alleging rather tersely that the defendant County employees conducted the medical examinations without notice to, consent from, or the opportunity to be present for the Parents, through judicial deception). Plaintiffs' federal civil rights allegations satisfy federal pleading standards.

***V. Plaintiffs Concede the Litigation Privilege Bars Their Bane Act Claim***

Because the Plaintiffs' Bane Act claim cannot meet all the elements of a malicious process claim, they concede it unfortunately has to be dismissed. While the Bane Act as amended in 2022 now permits claims sounding in malicious prosecution, Plaintiffs cannot show the state proceedings terminated in their favor because they were nonparties. A plaintiff's only viable claim notwithstanding the litigation privilege set forth in Cal. Civil Code § 47(b) is one sounding in malicious prosecution. *See Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 902 (E.D. Cal. 2006) (dismissing a defamation claim and stating "[t]he litigation privilege does not apply to claims of malicious prosecution [which are] . . . perhaps the only exception to the absolute nature of the litigation privilege"); *Oei v. N. Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1102 (C.D. Cal. 2006) ("[O]nly claims that incorporate all elements of a malicious prosecution claim are exempt from operation of the litigation privilege.") (citing *Hagberg v. Cal.*

KGL

*Federal Bank FSB*, 32 Cal. 4th 350, 375 (2004)). However, while Plaintiffs' state claims are subject to dismissal, section 47(b) has no application to their federal claims, which remain valid. *See Kimes v. Stone*, 84 F.3d 1121, 1127-1128 (9th Cir. 1996).

### *VI. If the Court Finds Any Merit to Defendants' Attacks on Plaintiffs' Federal Claims, Leave to Amend Should Be Granted*

Because this action is obviously not intended for purposes of delay or harassment and is instead based on substantial facts alleged in good faith, leave to amend should be granted in the event that the Court finds any defect warranting relief to the Defendants as to Plaintiffs' federal claims.

After a court has decided to grant a 12(b)(6) motion, it must then decide whether to grant leave to amend. A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment...." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Segalman v. SW Airlines*, 913 F.Supp.2d 941, 945 (E.D.Cal. 2012).

WHEREFORE the Plaintiffs request that the Defendants' challenge as to the First Cause of Action be rejected on all asserted grounds. Plaintiffs concede the Second Cause of Action is subject to dismissal. Plaintiffs alternatively request leave to amend as to the First Cause of Action.

Dated: August 22, 2024

LAW OFFICE OF KEVIN G. LITTLE

*/s/ Kevin G. Little*
Kevin G. Little
Attorneys for Plaintiffs Universal Meditech Inc. and David He

KGL