Kevin G. Little (SBN 149818)
**LAW OFFICE OF KEVIN G. LITTLE**
Post Office Box 8656
Fresno, California 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
E-Mail: kevin@kevinglittle.com

Anthony P. Capozzi (SBN 68525)
**LAW OFFICES OF ANTHONY P. CAPOZZI**
1233 W Shaw Avenue, Suite 102
Fresno, California 93711
Telephone: (559) 221-0200
Facsimile: (559) 221-7997
E-Mail: anthony@capozzilawoffices.com

Attorneys for Plaintiffs Universal Meditech Inc. and David He

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION**

| | |
|---|---|
| UNIVERSAL MEDITECH, INC., a California corporation; DAVID HE, an individual<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF REEDLEY; BUILDING OFFICER JEREMY HARRISON; CODE ENFORCEMENT OFFICER JESALYN HARPER; FIRE CHIEF JEFFREY ISAAK; COUNTY OF FRESNO; ASSISTANT PUBLIC HEALTH DIRECTOR HUMBERTO PRADO; FDA-OCI SPECIAL AGENT JEFFREY MAURICE; FDA-OCI SPECIAL AGENT MARIDEHL MATHER; UNKNOWN GOVERNMENT OFFICIALS<br><br>Defendants. | Case No.: 1:24-cv-00528-JLT-EPG<br><br>*Assigned to: The Hon. Jennifer L. Thurston*<br><br>**PLAINTIFFS' OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE FEDERAL DEFENDANTS; ALTERNATIVE REQUEST FOR LEAVE TO AMEND**<br><br>Complaint Filed: MAY 6, 2024 |

TO THE HONORABLE COURT:

Plaintiffs Universal Meditech, Inc. and David He, through their undersigned counsel, hereby submit this opposition to the motions to dismiss filed by federal defendants FDA-OCI

Special Agent Jeffrey Maurice and FDA-OCI Special Agent Maridehl Mather ("the Moving Defendants").

Plaintiffs base their opposition on the within points and authorities, as well as any additional evidence and argument that may be presented in connection with this motion, and also the Court's file in this matter.

Mr. He's claim arises under the Fourth Amendment for excessive force during an arrest, while UMI's claim involves unlawful search and seizure due to an invalid warrant. Defendants argue that Plaintiffs' claims fall outside the scope of the *Bivens* remedy and should be dismissed. However, based on the reasoning in the recent Ninth Circuit decision *Watanabe v. Derr*, 23-15605 (9th Cir. 2023) (decision dated 9/6/2024), *Lanuza v. Love*, 889 F.3d 1019 (9th Cir. 2018), and *Sorto-Vasquez Kidd*, 2021 WL 1685331 (C.D. Cal. Apr. 26, 2021), these claims should proceed under Bivens. The alleged misconduct—excessive force, falsified evidence, and invalid search warrants—directly implicates fundamental constitutional rights, and there are no special factors that would warrant the denial of a *Bivens* remedy. A copy of the recent slip opinion in *Watanabe v. Derr* will be attached to further support Plaintiffs' argument that Bivens remedies are available in these types of constitutional violation claims.

Finally, Plaintiffs alternately request leave to file an amended pleading, as permitted by Federal Rule of Civil Procedure 15.

## INTRODUCTION

Plaintiffs filed this action on May 6, 2024, asserting jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. DN 1. The original Complaint named the City of Reedley, Building Officer Jeremy Harrison, Code Enforcement Officer Jesalyn Harper, Fire Chief Jeffrey Isaak, County of Fresno, Assistant Public Health Director Humberto Prado, FDA-OCI Special Agent Jeffrey Maurice, FDA-OCI Special Agent Maridehl Mather, and Unknown Government Officials. DN 1.

On October 30, 2024, the Moving Defendants filed the instant motion. DN 28. Essentially, the Moving Defendants claim recent Supreme Court decisions prevent Plaintiffs from stating *Bivens* claims and that the factual allegations are also legally insufficient.

As set forth more fully herein, the Moving Defendants' motions should be denied. This case is meritorious and should proceed through discovery and toward trial.

## SUPPORTING FACTUAL ALLEGATIONS

Plaintiffs' Complaint sets forth the following factual allegations (DN 1, ¶¶ 4-24):

## PARTIES

> 4. Plaintiff Universal Meditech, Inc. (UMI) is a California corporation in good standing, Entity No.3811331. UMI has been in lawful business in the State of California since 2015,operating at authorized locations in Tulare and Fresno County at all relevant times. UMI's ownership is based in the People's Republic of China. UMI is in the lawful business of manufacturing and producing diagnostic testing kits and other biologic medical devices. At all times when it was actively manufacturing and producing said devices, UMI had valid authorization from the federal Food and Drug Administration (FDA). Due to a business dispute with its landlord in the fall of 2022, UMI ceased its lawful operations in the City of Fresno and rented a warehouse in the City of Reedley, located at 850 I Street. UMI began storing its assets at the Reedley warehouse beginning in November 2022, in anticipation of the completion of its new facility -- then under construction in the City of Fresno – becoming available in May 2023. The Reedley warehouse was simply that, a warehouse, and UMI was not in active business during the time that its business assets were being stored there.
>
> 5. Plaintiff David He is a Chinese national living in the United States in the State of California. Mr. He was at all times an authorized representative of UMI.
>
> 6. Defendant City of Reedley ("Reedley") is a public entity under California law. Reedley operates through its subsidiary agencies and personnel. Reedley is sued herein under California law, under which it is vicariously responsible for the unlawful acts of its employees and agents pursuant to California Government Code § 815.2.
>
> 7. Defendant Building Officer Jeremy Harrison ("Officer Harrison") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Officer Harrison was on duty and acting as a Reedley officer and employee. At all material times herein, Officer Harrison acted individually and within the course and scope of his employment with Reedley. Officer Harrison is sued in his personal capacity for acts he performed under the color of law. As alleged herein,

Plaintiffs believe in good faith that Officer Harrison is legally responsible and liable for the injuries and damages alleged herein.

8. Defendant Code Enforcement Officer Jesalyn Harper ("Officer Harper") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Officer Harper was on duty and acting as a Reedley officer and employee. At all material times herein, Officer Harper acted individually and within the course and scope of his employment with Reedley. Officer Harper is sued in his personal capacity for acts she performed under the color of law. As alleged herein, Plaintiffs believe in good faith that Officer Harper is legally responsible and liable for the injuries and damages alleged herein.

9. Defendant Fire Chief Jeffrey Isaak ("Chief Isaak") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Chief Isaak was on duty and acting as a Reedley officer and employee. At all material times herein, Chief Isaak acted individually and within the course and scope of his employment with Reedley. Chief Isaak is sued in his personal capacity for acts he performed under the color of law. As alleged herein, Plaintiffs believe in good faith that Chief Isaak is legally responsible and liable for the injuries and damages alleged herein.

10. Defendant County of Fresno ("Fresno County") is a public entity under California law. Fresno County operates through its subsidiary agencies and personnel. Fresno County is sued herein under California law, under which it is vicariously responsible for the unlawful acts of its employees and agents pursuant to California Government Code § 815.2.

11. Defendant Assistant Public Health Director Humberto Prado ("Asst. Dir. Prado") is, upon information and belief, a citizen and resident of the State of California, County of Fresno. With respect to all of the acts complained of herein, Asst. Dir. Prado was on duty and acting as a Fresno County officer and employee. At all material times herein, Asst. Dir. Prado acted individually and within the course and scope of his employment with Fresno County. Asst. Dir. Prado is sued in his personal capacity for acts he performed under the color of law. As alleged herein, Plaintiffs believe in good faith that Asst. Dir. Prado is legally responsible and liable for the injuries and damages alleged herein.

12. Defendant FDA-OCI Special Agent Jeffrey Maurice ("S.A. Maurice") is, upon information and belief, a citizen and resident of the State of California, County of Alameda. With respect to all of the acts complained of herein, S.A. Maurice was on duty and acting as a federal law enforcement official with the FDA's Office of Criminal Investigations. At all material times herein, S.A. Maurice acted individually and within the course and scope of his employment with the FDA. S.A. Maurice is sued in his personal capacity for acts he performed under the color of law. As alleged herein, Plaintiffs believe in good

faith that S.A. Maurice is legally responsible and liable for the injuries and damages alleged herein.

13. Defendant FDA-OCI Special Agent Maridehl Mather ("S.A. Mather") is, upon information and belief, a citizen and resident of the State of California, County of Alameda. With respect to all of the acts complained of herein, S.A. Mather was on duty and acting as a federal law enforcement official with the FDA's Office of Criminal Investigations. At all material times herein, S.A. Mather acted individually and within the course and scope of her employment with the FDA. S.A. Mather is sued in her personal capacity for acts she performed under the color of law. As alleged herein, Plaintiffs believe in good faith that S.A. Mather is legally responsible and liable for the injuries and damages alleged herein.

14. The fictitious defendants are sued as Unknown Government Officials and they are, upon information and belief, citizens and residents of the State of California. With respect to all of the acts complained of herein, these fictitious defendants were on duty and were acting as officers and employees of a California public entity, or a cooperating state or federal law enforcement agency. At all material times herein, these fictitious defendants acted individually and within the court and scope of their employment. These fictitious defendants are sued in their individual capacities for acts they performed under the color of law. As alleged herein, Plaintiffs believe in good faith that these fictitious defendants are legally responsible and liable for the injuries and damages alleged herein. These fictitious defendants will be renamed in their actual names once they become known.

## **FACTUAL ALLEGATIONS**

15. Shortly after UMI rented its Reedley warehouse, it began to be investigated by some or all of the Defendants. Plaintiffs cooperated fully in the investigation, and by March 2023 it should have been clear that UMI was not in active business and was only storing its assets at the warehouse it was leasing. To the extent that there was any activity at the warehouse, it was only to monitor and maintain its valuable assets, which included biological materials and laboratory mice, as well as medical devices and medical device components. At all times, UMI had its assets safely and securely stored, and there was never any indication of any threat to public health and safety. It should have further been clear that the federal Animal Welfare Act, 7 U.S.C. § 2145, *et seq*., exempted UMI's possession and maintenance of laboratory mice, and preempted any conflicting state laws. UMI and Mr. He also made it clear that to the extent that there were any zoning or permitting issues related to the storage of the valuable assets at the Reedley warehouse, UMI would cure those issues by either further securing the warehouse, obtaining the needed authorizations, or relocating to another authorized location. UMI personnel and Mr. He were at all times open and cooperative with any and all government officials involved in the investigation.

16. Notwithstanding these clear and ascertainable facts, Officer Harrison wrote and submitted an affidavit under penalty of perjury on March 10, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on March 13, 2023.

17. Further notwithstanding these clear and ascertainable facts, Officer Harper wrote and submitted an affidavit under penalty of perjury on March 29, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on April 4, 2023.

18. Further notwithstanding these clear and ascertainable facts, Asst. Dir. Prado wrote and submitted an affidavit under penalty of perjury on June 15, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on June 23, 2023.

19. Further notwithstanding these clear and ascertainable facts, Officer Harper and Chief Isaak wrote and submitted affidavits under penalty of perjury on July 18, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on July 26, 2023.

20. Further notwithstanding these clear and ascertainable facts, Asst. Dir. Prado wrote and submitted an affidavit under penalty of perjury on June 15, 2023 indicating that UMI was operating an illegal laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on June 23, 2023.

21. Further notwithstanding these clear and ascertainable facts, S.A. Maurice wrote and submitted an affidavit under penalty of perjury on September 11, 2023 indicating that UMI was operating a laboratory, not merely storing its assets, and that it was engaging in hazardous and unlawful activities. This and other false representations resulted in the issuance of a warrant on September 13, 2023.

22. In connection with the execution of these various warrants, UMI was deprived of millions of dollars of property without lawful justification, as a result of the seizure and destruction of its assets, including extremely valuable, genetically engineered laboratory mice not subject to duplication. Further, based on the false narrative that UMI was storing contagions that endangered the community, its biological assets were destroyed and seized, as well as its medical device inventory and business records. Explicit and repeated representations from UMI representatives regarding the lawful nature and valuable nature of its assets

were ignored, and they were seized and, in many instances, destroyed without justification.

23. The Defendants also filed their false and misleading affidavits as public records, which resulted in a wave of extremely negative publicity, fueled by a combination of xenophobia, discrimination, ignorance, and the motivations of public officials seeking to capitalize on those sentiments. UMI was characterized as operating an "illegal Chinese lab" and of engaging in bioterrorism, although neither accusation had even a scintilla of factual support. These accusations have done irreparable damage to UMI's business interests and turned a multimillion dollar operation into a worthless pariah. UMI's new facility also had to be abandoned as a result of the negative publicity.

24. Despite being unjustifiably dragged through the mud as a result of the Defendants' misconduct, UMI and Mr. He continued to try to cooperate with investigators, in an effort to salvage their business and at least some of their assets. Under the direction of FDA officials, Reedley officials arranged a pretext meeting with Mr. He on October 19, 2023, so that he could be arrested based on baseless federal criminal charges. In connection with that arrest, S.A. Maurice and S.A. Mather used unreasonable and excessive force on Mr. He, which resulted in his sustaining a severe head injury that continues to cause him serious health issues and pain.

## STANDARD OF REVIEW

The moving Defendants invoke Federal Rules of Civil Procedure 12(b)(6) in their motion.

***12(b)(6)***

Generally, the federal system is one of notice pleading. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (2002). A pleading is only required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). The required "short and plain statement" must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. The Supreme Court has more recently clarified that a federal complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Even after *Twombly* and *Ashcroft*, however, a plaintiff need not plead a *prima facie* case in his complaint. *Swierkiewicz*, 534 U.S. at 514–515; *see also Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011) (reaffirming *Swierkiewicz*'s continuing validity). "The theory of the federal rules is that once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts." *Starr v. Baca*, 652 F.3d at 1212.

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Mollett v. Netflix, Inc*., 795F.3d 1062, 1065 (9th Cir. 2015). The district court's consideration of a Rule 12(b)(6) motion to dismiss is limited to considering the allegations in the complaint. *Leite v. Crane Co*., 749 F.3d 1117, 1121-22 (9th Cir. 2014); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). All of the complaint's factual allegations are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth*.,540 F.3d 916, 919 (9th Cir. 2008). Except as otherwise required under the limited circumstances inapplicable here, facts need only be alleged generally, and the court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pacific Prop. & Dev. Corp*., 358 F.3d 1097, 1106 (9th Cir. 2004). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).

Of course, a court considering a 12(b)(6) motion does not have "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d1049, 1056-57 (9th Cir. 2008). Legal conclusions also need not be accepted. *Sprewell v. Golden State Warrio*rs, 266 F.3d 979, 988 (9th Cir. 2001). The Court also is not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice. *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d1251, 1254 (9th Cir. 2013). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. *See Chaset v. Fleer/Skybox Int'l*, 300F.3d 1083, 1087-1088 (9th Cir. 2002); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (if a court dismisses the complaint, it should grant leave to amend, unless it determines that the pleading could not possibly be cured by the allegation of other facts).

## ARGUMENT

### I. *Plaintiffs' Bivens Claims Do Not Present an Impermissible New Context*

#### A. The *Bivens* Framework and Its Application

The *Bivens* doctrine allows individuals to seek damages from federal officers for violations of constitutional rights. The Supreme Court, in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), held that the *Bivens* remedy may be extended to new contexts but emphasized a cautious approach, requiring courts to assess whether the claim arises in a new context and whether "special factors" counsel hesitation. 582 U.S. at 128. The inquiry into whether the case presents a "new context" centers on whether the factual and legal situation is sufficiently similar to the core principles that justified the original *Bivens* remedy. *Id*.

In the recent *Watanabe v. Derr* decision, dated September 6, 2024, the Ninth Circuit emphasized that a claim does not present a new context merely because it involves different facts, as long as the constitutional violation is of the same nature as those previously addressed by the Court. In *Watanabe*, the court found that a claim of deliberate indifference to serious medical needs under the Eighth Amendment was not a new context because it was "identical" in

all meaningful respects to the claim in *Carlson v. Green*, 446 U.S. 14 (1980). Similarly, Mr. He's excessive force claim and UMI's claim for unlawful search and seizure are grounded in well-established constitutional rights under the Fourth Amendment, and the differences in factual details are not meaningful enough to prevent them from falling within the scope of *Bivens*.

In *Sorto-Vasquez Kidd*, the court allowed a *Bivens* claim to proceed based on unlawful searches and detentions by federal officers, even where the facts differed from those in prior cases. *Sorto-Vasquez Kidd*, 2021 WL 1685331 at *11-12. This reasoning applies here: Mr. He's excessive force claim and UMI's claim for unlawful search and seizure are not "meaningfully different" from *Bivens* or prior cases, as they also concern constitutional violations under the Fourth Amendment.

B. **Plaintiffs' Claims Are Analogous to Existing Precedent**

1. **Mr. He's Excessive Force Claim Under the Fourth Amendment**

Mr. He's claim for excessive force during an arrest by federal officers is directly tied to violations of the Fourth Amendment. The Ninth Circuit has consistently held that excessive force claims are actionable under *Bivens*. In *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), the court ruled that federal officers may be held liable for constitutional violations related to the use of excessive force in the context of arrests and detentions. 263 F.3d at 1078-1079. This right to be free from excessive force is clearly established, and any reasonable officer should know that using excessive force during an arrest is unconstitutional.

In *Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012), the Ninth Circuit allowed a *Bivens* claim for excessive force during an arrest, 683 F.3d 1111, and the reasoning in that case supports the claim here. Mr. He's excessive force claim is squarely within the framework of *Bivens*, where the law on excessive force during an arrest has been clearly established.

2. **UMI's Invalid Search and Seizure Claim Under the Fourth Amendment**

UMI's claim for unlawful search and seizure arises from the federal officers' alleged reliance on an invalid warrant to search its property. As shown in *Lanuza v. Love*, 889 F.3d 1019 (9th Cir. 2018), falsifying evidence to obtain a search warrant violates the Fourth Amendment,

and *Bivens* remedies are available in such cases. In *Lanuza*, the Ninth Circuit extended *Bivens* to cases where federal officers falsify evidence, even in judicial proceedings. 889 F.3d 1026-1027, The court reasoned that because such conduct undermines the integrity of the judicial process, it directly implicates constitutional protections. *Id*.

UMI's claim here, involving the issuance of an invalid search warrant based on false affidavits, is analogous to the *Lanuza* case. Federal officers cannot rely on false or invalid warrants to conduct searches, as this violates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Bivens* has long allowed for redress in situations involving unlawful searches and seizures, and UMI's claim arises from precisely the type of misconduct that *Bivens* was intended to address.

***II. Special Factors Do Not Preclude a Bivens Remedy***

A. **The Availability of Alternative Remedies Does Not Preclude Plaintiffs' Claims**

Defendants argue that the availability of alternative remedies, such as the Federal Tort Claims Act (FTCA), bars a *Bivens* remedy. However, as the Ninth Circuit held in *Lanuza v. Love*, 889 F.3d 1019 (9th Cir. 2018), the availability of alternative remedies does not automatically preclude *Bivens* relief when the violations concern fundamental constitutional rights. *Id*. at 1027-1028. In this case, the FTCA does not provide an adequate remedy for the constitutional violations alleged, particularly the falsification of evidence and excessive force. As in *Lanuza*, a *Bivens* remedy is necessary to hold federal officers accountable for such violations.

B. **The Risk of Judicial Intrusion into Executive Functions**

Defendants also argue that judicial intervention would improperly intrude on executive functions. However, as *Lanuza* clarified, judicial oversight is crucial when federal officers violate constitutional rights. *Id*. In *Lanuza*, the court emphasized that judicial intervention is needed to ensure that officers who engage in misconduct are held accountable, especially when it involves falsifying evidence or violating the Fourth Amendment. *Id*. In this case, the federal officers' actions—such as fabricating evidence to secure an invalid warrant and using excessive

force during an arrest—undermine fundamental constitutional protections, making judicial oversight essential.

In *Sorto-Vasquez Kidd*, the court allowed claims for unlawful search and seizure by federal officers to proceed, rejecting the argument that such claims would intrude on the executive branch's discretion. 2021 WL 1685331 at *11-12. The same logic applies here—judicial intervention is crucial to safeguarding constitutional rights and preventing abuse of power by federal officers.

***III. Qualified Immunity Does Not Apply***

Defendants assert that they are entitled to qualified immunity. However, as demonstrated in *Chavez* and *Devereaux*, the constitutional violations at issue—excessive force during an arrest and the use of falsified evidence to secure an invalid warrant—are well-established. A reasonable officer would know that these actions violate the Fourth Amendment. In *Chavez*, the Ninth Circuit held that qualified immunity does not shield officers from liability when their conduct clearly violates constitutional rights, and the same reasoning applies here. 683 F.3d 1111-1112.

For the reasons outlined above, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss. Plaintiffs' claims arise from well-established constitutional violations under the Fourth Amendment, and there are no special factors that preclude a *Bivens* remedy. Defendants are not entitled to qualified immunity, and Plaintiffs' claims should proceed to discovery.

***IV. Plaintiffs' Factual Allegations Support their Bivens Claims***

If the Court reviews, as required, the allegations of the Complaint themselves, it is apparent that they are sufficient. Plaintiffs contend that the individual defendants misrepresented essential facts regarding the hazardous, illegal, and unhealthful nature of the contents of the subject warehouse. Complaint, ¶¶ 15-24. Even under current standards, the federal pleading rules are comparatively lenient. Typically, facts need only be alleged generally, and the court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004). Thus, "for a

complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).

There is a well-established constitutional right for individuals to be free from deception in the presentation of evidence during court proceedings. *Greene v. Camreta*, 588 F.3d 1011, 1034–35 (9th Cir. 2009), *vacated in part on other grounds*, 563 U.S. 692 (2011); *see also Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) ("A seizure conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment."); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108 (9th Cir. 2010) (deliberately fabricating evidence in civil child abuse proceedings violates due process) "[G]overnment perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in [the] courts." *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017). To prevail on a claim for judicial deception, "the plaintiff must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). Plaintiffs' allegations satisfy this standard.

Defendants also contend that Plaintiffs have failed to satisfy the heightened standards for pleading fraud, when alleging judicial deception claims. This Circuit has held that allegations which satisfy Rule 12(b)(6) usually also satisfy Rule 9(b). *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (discussing pleading requirements for claims regarding fraud under Rule 9(b), for which dismissals are "functionally equivalent" to Rule 12(b)(6)). Moreover, "this [heightened pleading] standard 'does not require absolute

particularity or a recital of the evidence.'" *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (3d ed. 2016)). Further, "a complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to conduct the fraud." *Id*. (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). Plainti8ffs' factual allegations are similar to those this Circuit has found satisfy Rule 9(b) in the judicial deception context. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1145-1146 (9th Cir. 2021) (alleging rather tersely that the defendant County employees conducted the medical examinations without notice to, consent from, or the opportunity to be present for the Parents, through judicial deception). Plaintiffs' allegations satisfy federal pleading standards.

***V. If the Court Finds Any Merit to Defendants' Attacks on Plaintiffs' Federal Claims, Leave to Amend Should Be Granted***

Because this action is obviously not intended for purposes of delay or harassment and is instead based on substantial facts alleged in good faith, leave to amend should be granted in the event the Court finds any defect as to Plaintiffs' federal claims.

After a court has decided to grant a 12(b)(6) motion, it must then decide whether to grant leave to amend. A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment...." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Segalman v. SW Airlines*, 913 F.Supp.2d 941, 945 (E.D.Cal. 2012).

WHEREFORE the Plaintiffs request that the Moving Defendants' motion must be denied on all asserted grounds. Plaintiffs alternatively request leave to amend.

Dated: November 13, 2024

LAW OFFICE OF KEVIN G. LITTLE

*/s/ Kevin G. Little*
Kevin G. Little
Attorneys for Plaintiffs Universal Meditech Inc. and David He